_[iWICKER, Judge.
This appeal arises from a petition for damages filed on behalf of Ethel Watts Brown, plaintiff/appellant, against Henri Chabanais, defendant/appellee, for failure to deliver title to immovable property within the time agreed upon. Nellie Romero, executrix, was subsequently substituted as defendant upon Chabanais’ decease. The trial judge granted judgment in favor of Brown, awarding her the sum of $726.75 plus court costs. Brown has appealed seeking an increase in damages; Romero has answered the appeal contesting this award. We vacate the judgment and remand.
This case was submitted on the record and the following stipulations:
1. On February 3, 1993, Ethel Watts Brown and Henri Chabanais signed an “Agreement to Purchase or Sell” (the “Purchase Agreement”) under which agreement Henri Chabanais agreed to sell the property located at 3416-18 Short Street in New Orleans, Louisiana (the “Property”) for the sum of $20,000.00 which sale was to occur on or before June 21,1993, the date on which the Agreement, as extended, expired. A true copy of the Purchase Agreement is attached hereto as Exhibit “1.”
2. Upon acceptance of the offer, Ethel Watts Brown deposited the sum of $4,000.00 with seller’s real estate agent in accordance with lines 26-30 of the Purchase Agreement.
_jj3. Ethel Watts Brown obtained a commitment for a mortgage loan on the Property which satisfied the contingency language that appears in lines 10,11 and 12 of the Purchase Agreement.
4. Ethel Watts Brown was prepared to take title to the Property within the delays specified in the Purchase Agreement.
5. At the time Henri Chabanais signed the Purchase Agreement, the Property was, in fact, owned by Marie Leonie Puy-oulet, the deceased wife of Henri Chaba-nais, who had died on July 6, 1991.
6. Henri Chabanais did not cause the succession of his wife, Marie Leonie Puyoulet Chabanais, to be opened (proceedings 453-801, 24th Judicial District Court) until after the expiration of the deadline for taking title as set forth in the Purchase Agreement.
7. On September 17, 1993, Henri Chaba-nais, then the court appointed testamentary executor of the estate of his late wife, offered to deliver to Ethel Watts Brown title to the property, subject to court approval, which offer was rejected.
8. Following Ethel Watts Brown’s rejection of the offer of Henri Chabanais, as executor of his late wife’s estate, he returned to Ethel Watts Brown the full amount of her deposit, i.e., $4,000.00.
9. In connection with her intentions to purchase the Property, Ethel Watts Brown expended $350.00 for an appraisal, $350.00 as deposit to Michael Charbonnet (the closing attorney designated by the Homestead), and $26.75 for a credit report.
10. Through the date of these stipulations, plaintiff has incurred the sum of $1,097.40 in attorney’s fees.
Also included into evidence was a letter dated June 1, 1993. This letter reportedly was written by Steven D. Roth of Roth & Associates and signed by Henri Chabanais as agreed to. The letter expresses sympathy for Chabanais’ recovering at home from a hospital visit. It describes Chabanais as being “wheel chair bound.” The letter indicates Roth is returning Brown’s deposit. It states:
After the sales agreement had been fully executed and proceedings begun, you found out that there is a succession that has never been opened and that you plan *821 to do nothing about it, as is related in your letter dated May 6, 1993. Additionally, you now make me aware that there is a termite problem currently existing within the home and I feel we must notify the Purchaser of this immediately.
The trial judge reasoned as follows:
Based upon the stipulated facts submitted by plaintiff and defendant, and the Purchase Agreement, the Court finds Mr. |4Chabanais was unable to deliver merchantable title within the time stipulated rendering the contract null and void. Clark v. Harrison Property Management Company, Inc., 359 So.2d 614 (La.1978). No evidence was produced to distinguish this case from Clark. The Court does find, however, that Ms. Brown should recover the reasonable expenses incurred in connection with the execution of the purchase agreement.
On appeal Brown specifies the following errors:
1. The trial judge erred in failing to conclude that a universal residuary legatee and appointed executor does not have an “insurmountable obstacle” to the delivery of title when he is required only to open the succession of his deceased wife’s estate, and
2. Alternatively, the trial judge erred in failing to require the seller to prove the obstacle was insupportable, a burden he failed to carry.
In Romero’s answer to the appeal she specifies the following:
1. It was error for the trial judge to award expenses to Brown when the seller prevailed on the merits.
The Louisiana Supreme Court addressed the issue of failure to deliver an unmerchantable title in Clark v. Harrison Property Management Company, Inc., 359 So.2d 614 (La.1978). In Clark the plaintiffs sued for damages or specific performance for failure to deliver a merchantable title. There the succession proceeding was complex and presented an “insurmountable obstacle” which the seller was unable to resolve prior to the stipulated time. The court relied on the following language in the agreement to purchase which is essentially identical to that at bar:
The seller shall deliver to purchaser a merchantable title, and his inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the right to demand the return of the deposit from the holder thereof, and reserving unto agent the right to recover commission.
The contract language in the case at bar reads:
The seller shall deliver a merchantable title, and his inability to deliver such title within the time stipulated herein shall render this contract null and void, reserving unto purchaser the right to demand the return of the deposit from the holder hereof.
Having found the seller was unable to deliver title due to an “insurmountable obstacle” the Clark court declared the contract null and void and allowed the purchaser to only recover the deposit. Thus, the court held that “inability” meant “insurmountable obstacle.”
| gin this case the trial judge adopted a different view. He did not determine “inability” to mean “insurmountable obstacle.” Evidently the trial judge reasoned that since Chabanais did not have title he was unable to deliver title, thus rendering the contract null and void.
That position, taken by the trial judge as well as by Romero is evidently based on a discussion contained in our former opinion of Vazquez v. Davis, 466 So.2d 671, 674 (La. App. 5th Cir.1985), writ denied, 468 So.2d 574 (La.1985). In Vazquez we held that the seller “could not validly transfer ownership in property before succession proceedings were had.” Id. at 674. However, in Vazquez the issue of contractual interpretation was not before the court. We were not presented with the issue of resolving the meaning of the term “inability” in an agreement to purchase. Instead, we addressed the issues of negligence and breach of warranty. In that case the act of sale had taken place. The purchasers did not have merchantable title.
*822 Vazquez does not apply; Clark applies. Since the seller in Clark was unable to deliver merchantable title the court did not reach the issue of the effect of willful refusal to open the succession.
Here, Brown alleges Chabanais refused to open succession, thus entitling her to damages. However, the record is devoid of any evidence on this issue. We do not view the letter reportedly written by Roth to be determinative. The letter purports to give an impression of yet another letter allegedly written by Chabanais. There was no stipulation as to the contents of either letter, one of which is not in evidence. Furthermore, the letter gives no explanation as to why Chaba-nais did not go forward with the succession.'
Under Clark the inability to deliver a merchantable title was treated as a defense by the seller. Thus, the seller bears the burden of proof on this issue. We extend the reasoning in Clark and decide for the first time the proper test to apply when a seller does not meet this burden. A seller would fail to meet the Clark burden when there has been a refusal to open succession and not an inability to do so.
In the purchase agreement Chabanais undertook the obligation to deliver merchantable title. If unable to do so through an insurmountable obstacle then the contract would be | firendered null and void. The purchaser would be entitled to recover the deposit and no damages. Clark.
However, the paragraph following the provision concerning the inability to deliver merchantable title provides for the situation wherein the seller refuses to go forward with the obligation to deliver merchantable title. That paragraph provides:
In the event the seller fails to comply ■with this agreement within the time specified or for any other reason, the purchaser shall have the right either to demand the return of his deposit in full plus an equal amount to be paid as penalty by the seller; or the purchaser may demand specific performance, at his option [emphasis added].
Here Chabanais had an obligation to open the succession to deliver merchantable title. Clark. If he refused to do so, and there was no insurmountable obstacle then his refusal would subject him to the penalty provision above. Brown could have chosen to demand specific performance in requiring him to open the succession. Instead, she has chosen to pursue damages. We note, however, there is no provision in the agreement for attorney’s fees under these circumstances.
We are unable to make the determination of whether Chabanais was unable to deliver a merchantable title due to an insurmountable obstacle since the record lacks evidence in this regard. See, e.g. Futch v. Futch, 26-149 (La.App. 2nd Cir. 9/23/94), 643 So.2d 364. Having decided for the first time the proper test we find it necessary to remand the case to the trial court to permit the parties to introduce the appropriate evidence or stipulations. In Simeon v. Doe, 618 So.2d 848, 852 (La.1993), the Supreme Court applied a different theory of recovery and accordingly remanded the case for the taking of further evidence consistent with its views.
We set aside and remand for a new trial consistent with the views expressed herein. Costs will await the final outcome of this case. Simeon.

VACATED AND REMANDED.